FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 02, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMAAL C., | No. 4:21-CV-05158-SAB |
| Plaintiff, | |
| v. | **ORDER GRANTING** |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;** |
| Defendant. | **DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Cross-Motions for Summary Judgment. ECF Nos. 11, 12. The motions were heard without oral argument. Plaintiff is represented by Chad L. Hatfield; Defendant is represented by Jeffrey Staples and Timothy M. Durkin.

Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying his application for child insurance benefits under the Social Security Act, 42 U.S.C. §§ 1382. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies Defendant's Motion for Summary Judgment, ECF No. 12.

//

I.     **Jurisdiction**

On April 21, 2015, Plaintiff filed an application for child's insurance benefits, alleging disability beginning December 12, 1976.[1] On October 13, 2021, Plaintiff appeared and testified by telephone before ALJ Jesse K. Shumway, who presided from Spokane, Washington. He was represented by his attorney, Chad Hatfield. The ALJ issued a decision on October 20, 2021, finding that Plaintiff was not disabled.

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on January 13, 2021. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g). Plaintiff requested review by the Appeals Council; the Appeals Council denied the request on February 25, 2021. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. § 405(g), 1383(c)(1)(3).

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on December 28, 2021. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

II.    **Five-Step Sequential Evaluation Process**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] Plaintiff's application was denied initially and on reconsideration. Plaintiff appealed that decision. The ALJ issued a decision on May 14, 2018, finding Plaintiff was not disabled. Plaintiff appealed that decision. On December 9, 2019, Magistrate Judge Dimke granted the parties' Stipulated Motion to Remand and ordered the ALJ to "exhibit and proffer the medical evidence in this case, including Exhibit 4F from Plaintiff's prior application." *See Jamaal C. v. Commissioner of Soc. Sec.*, 4:19-cv-05100-MKD, ECF No. 20.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~2**

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if their impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner has established a five-step sequential evaluation process to determine whether a person is disabled in the statute. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

**Step One**: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b), 416.920(b). If the claimant is not, the ALJ proceeds to step two.

**Step Two**: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairment is severe, the evaluation proceeds to the third step.

**Step Three**: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~3**

conclusively presumed to be disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering to the fourth step, the ALJ must first determine the claimant's residual functional capacity. An individual's residual functional capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The residual functional capacity is relevant to both the fourth and fifth steps of the analysis.

**Step Four**: Does the impairment prevent the claimant from performing work they have performed in the past? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to perform their previous work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

**Step Five**: Is the claimant able to perform other work in the national economy in view of their age, education, and work experience? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

### III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance,"

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~4**

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

### IV. Statement of Facts

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized herein.

Plaintiff was diagnosed with ADD when he was around 8 years old and he was prescribed Ritalin. He had difficulty adjusting to Ritalin. At times his behavior at home and school improved when he was on medication, but other times he lacked energy. Plaintiff complained about having headaches on and off since he started taking Ritalin. He believed that Ritalin made him depressed.

Plaintiff received special education assistance throughout his school years because of behavioral problems and learning disabilities. He left school after the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~5**

ninth grade. Plaintiff requested records from the Pasco and Kennewick School Districts where he received Special Education instruction. Neither school district retains records after so many years have passed. Plaintiff's primary care provider prior to age 22, Dr. Branson, passed away and no records were retained from that practice.

Plaintiff tried to earn his GED but was unsuccessful and gave up trying. He does not have a driver's license because he cannot pass the written test. Plaintiff has three children, but eventually CPS placed them with his mother. Plaintiff had numerous unsuccessful work attempts. They usually only lasted a few weeks. At the hearing, he testified that when he was working, he had problems with understanding and following directions and had difficulty with multi-step instructions. He would get frustrated because of his struggles and quit.

He worked at Walmart for a few weeks. He testified that he tried to do a lot of different tasks, but he was unable to complete them in a timely manner.

He testified that he has a hard time being around other people. He likes to be my himself. He explained that he never calls people or returns calls because he hates dealing with people.

In 2009, Plaintiff was found to be disabled since February 17, 2006 by an ALJ. The ALJ found that Plaintiff had the following severe impairments: attention deficit hyperactivity disorder, a dysthymic disorder and polysubstance abuse. The ALJ found that Plaintiff's ability to respond appropriately to supervision, co-workers, and usual work situations and to deal with changes in a routine work setting were substantially impaired. Because these limitations narrowed the range of work, Plaintiff was found disabled. The ALJ specifically noted that Plaintiff's substance use disorder was not a contributing factor material to the determination of disability.

### V. The ALJ's Findings

The ALJ issued an opinion affirming denial of child's insurance benefits.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~6

AR 669-676. The ALJ noted that because child's insurance benefits do not become payable until the attainment of age 18, the relevant period is from Plaintiff's 18th birthday on December 12, 1994 to the date he attained age 22 on December 12, 1998. *See* 20 C.F.R. 404.350(a)(5).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the relevant time period. AR 671.

At step two, the ALJ identified the following medically determinable impairments: ADHD; mood disorder. But it found Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months. AR 672. In the alternative, the ALJ noted that even if it were to find Plaintiff's ADHD and mood disorder to be severe and adopt the residual functional capacity outlined in hypothetical two at the hearing, Plaintiff would still have been able to perform jobs existing in significant numbers in the national economy, including industrial cleaner, kitchen helper, and laundry worker II. The ALJ found that Plaintiff was not under a disability at any time before December 11, 1998, the date he attained age 22.

**VI. Issues for Review**

1. Whether the ALJ properly evaluate Plaintiff's impairments at Step Two.

3. Whether the ALJ properly concluded that the record does not support a finding that Plaintiff's impairments existed beginning December 11, 1994 and December 11, 1998.

**VII. Discussion**

1. **Step Two Analysis**

The ALJ found that Plaintiff did not have any medically severe impairment or combination of impairments. The Step Two analysis is governed by the severity regulation that provides:

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 7

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.

§§ 404.1520(c), 416.920(c).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs. §§ 404.1521(b), 416.921(b). Such abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*

If the impairments are not severe enough to significantly limit the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

Here, while the record contains medical records from 1991 through 1993, as well as psychological evaluations from 2004-2006, there is little documentation for the period in question, December 1994 through December 1998.

Education records from January 14, 1994 through March 9, 1994 were obtained and considered by the ALJ. These records provided objective and subjective evaluations. Objective testing showed that Plaintiff had difficulty with visual alertness, sequencing skills and concrete and abstract perceptual motor skills. It was noted that Plaintiff would have difficulty using perception, anticipation and organization to work from a part to a whole. He would also have difficulty working towards an unknown goal. The Report referenced Plaintiff's long history of disruptive behaviors.

At that time, Plaintiff was having limited success in the Special Education

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~8

Program and was demonstrating considerable difficulty in some of his mainstreamed course. Plaintiff would engage in avoidance behaviors. He required auditory prompts with all visual information presentation although he was not responsive to in-classroom monitoring and accuracy checks. Plaintiff had difficulty staying on task and avoided prompts. He was often noncompliant when asked to perform a task.

It was noted that Plaintiff had attendance problems and difficulty following rules, which impacted negatively on his academic growth. Plaintiff was not responsive to direct instruction in work/learning situations, and he did not accept redirection. He had minimal commitment to success and used avoidance as a problem-solving technique, although for those classes for which he had an interest he had some success. Plaintiff had difficulty adjusting behavior to meet different expectations, did not socialize during class time, and was reluctant to engage in cooperative work assignments.

A Burke's Behavior Rating Scale was conducted, and it revealed the following:

> Very Significant Areas: excessive withdrawal, poor intellectuality, poor anger control, excessive resistance and poor social conformity.
>
> Significant Areas: poor physical strength, poor academics, poor attention, poor reality contact, poor impulse control, poor sense of identity.

It was noted that these findings were consistent with the observations in the regular and special education classroom, except for the poor physical strength, because at that time Plaintiff perceived himself to be strong and athletic. Notably, Plaintiff had difficulty following directions when he tried out for the high school basketball team.

The Report concluded that Plaintiff's academic program should focus on behavior interventions, organization skills and vocational/career path exploration.

In December 1996, Plaintiff was evaluated by the Division of Vocational

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~9**

Rehabilitation, Department of Social and Health Services (DVR). In determining that Plaintiff was eligible for services, DVR noted the following:

> Jamaal has difficulty with taking directions from others. He will not concentrate on task at hand to completion. His impulse control has caused him to lose employment. He has difficulty with attention to task and decision-making problems resulting him losing his last employment. He will not work well in employment that requires him to use math calculations.

The DVR records indicate that in March 1997 Plaintiff wanted to obtain his GED. In June 1997, it appears Plaintiff was still interested in obtaining employment, although he failed to cooperate early in the rehab process. By September 1997, DVR staff concluded that Plaintiff was merely playing games and was not serious about obtaining work. Plaintiff failed to contact staff and failed to follow through with employment opportunities. In October 1997, Plaintiff requested part-time work. A review of his vocation potential showed that Plaintiff was a very slow worker and was only able to perform small routine tasks. He missed a December 1997 appointment because he was ill. In January 1998, DVR staff concluded that Plaintiff was refusing to cooperate with services to assist him in finding employment. DVR closed his file in March 1998 because Plaintiff failed to contact them.

Here, the ALJ erred in failing to find that Plaintiff's ADD and mood disorder were not medically severe impairments. The January 1994 evaluation shows that Plaintiff's ADD and mood disorder significantly limited Plaintiff's ability to understand, carry out, and remember simple instructions, his use of judgment, his ability to respond appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. As such, these impairments meet the statutory definition of severe.

In finding that Plaintiff's ADD and mood disorder were not severe, the ALJ cherry-picked the 1994 report and concluded that Plaintiff's problems in school

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~10

were because he was not taking his medications, and because Plaintiff chose to be non-compliant at school. The ALJ focused on the last treatment record from March 1993 but failed to account for the many times that Plaintiff and his mother told the doctor that the Ritalin was making his sleepy and slow. The records from Dr. Henriques also indicate that there were times, even when all his meds, that Plaintiff was struggling in school. The ALJ erred in finding that Plaintiff's ADD and mood disorder were not severe.

2.  **Determination of Onset Date**

SSR-18-1p[2] provides guidance to determining the onset date. It instructs that the date that the claimant first meets the statutory definition of disability must be supported by the medical and other evidence and be consistent with the nature of the impairment(s). The relevant evidence considered includes: (1) the nature of the claimant's impairment; (2) the severity of the signs, symptoms, and laboratory findings; (3) the longitudinal history and treatment course (or lack thereof); (4) the length of the impairment's exacerbations and remissions, if applicable; and (5) any statement by the claimant about new or worsening signs, symptoms, and laboratory findings.

According to SSR18-1p, the date that the claimant first met the statutory definition of disability may predate their earliest recorded medical examination or the date of their earliest medical records, but SSA will not consider whether the claimant first met the statutory definition of disability on a date that is beyond the period under consideration. Evidence from other non-medical sources such as the

---

[2] SSR83-20 was rescinded and replaced October 2, 2018 by SSR 18-1p and SSR 18-2p. SSR 18-1p was to be used on all claims that were pending on and after the applicable date. The Appeals Council issued its opinion on February 27, 2019. Because Plaintiff's application was pending on October 2, 2018, SSR 18-1p applies.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~11

claimant's family, friends, or former employers, may be considered if additional medical evidence cannot be obtained or it does not exist (*e.g.*, the evidence was never created or was destroyed), and the date that the claimant first met the statutory definition of disability cannot be reasonably inferred based on the medical evidence in the file.

Specifically, SSR 18-1p states:

> At the hearing level of our administrative review process, if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of an ME by soliciting testimony or requesting responses to written interrogatories (i.e., written questions to be answered under oath or penalty of perjury). The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

SSR 85-15 states that the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

The ALJ concluded that Plaintiff was capable of working during the relevant period but was not interested in doing so. This conclusion is not supported by the record. Again, the ALJ cherry-picked the record to conclude that Plaintiff was capable of working. On the contrary, the 1994 evaluation conducted less than a year before the relevant time period supports the conclusion that Plaintiff simply did not have the skills or abilities to sustain full-time work. Consistent throughout

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~12

the record is that Plaintiff worked at a much slower pace than necessary to sustain full-time work. He had extreme difficulty focusing and completing tasks. He also had difficulty taking direction from other and struggled with impulse control and anger management. He used avoidance strategies which made completing tasks difficult. Rather, the record is clear that the same disabilities found by a different ALJ to be present in 2006 were present in 1994-1998.

### 3. Evaluation of Plaintiff's Testimony

The ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony that he dropped out of school and could not work because he had trouble following instructions and performed his work too slow for the same reasons as identified above. The ALJ failed to give proper credit to the 1994 evaluation, which supports Plaintiff's testimony.

## VII. Remand for Immediate Award of Benefits

Here, the ALJ erred in failing to infer from the records that Plaintiff was disabled from December 11, 1994 to December 11, 1998. These records show that Plaintiff was not able to sustain full-time work due to his ADD and mood disorder. As such, a remand for the calculation and award of benefits is both appropriate and required.

//
//
//
//
//
//
//
//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~13

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

3. The decision of the Commissioner is reversed and remanded for an immediate award of benefits.

4. Judgment shall be entered in favor of Plaintiff and against Defendant.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 2nd day of November 2022.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~14